## SPRINGFIELD FIRE & MARINE INS. CO. v. HUBBS-JOHNSON MOTOR CO.

### No. 2394.

Court of Civil Appeals of Texas. El Paso.
May 29, 1930.

Rehearing Denied June 19, 1930.

W. B. Silliman, of Ft. Stockton, and Thompson, Knight, Baker & Harris, of Dallas, for appellant.

R. D. Blaydes and W. C. Jackson, both of Ft. Stockton, for appellee.

PELPHREY, C. J.

In the month of November, 1926, appellee company was the owner of a building and a general stock of auto merchandise, consisting of tires, tubes, auto parts, and accessories, situated in a building located on lot No. 13 in block No. 31, in the town of McCamey, Tex.

They secured from Laura Furgason, agent of appellant in Ft. Stockton, Tex., certain policies of fire insurance on said building and stock of merchandise in the sum of $2,000 on the building and $4,000 on the stock.

Four policies were issued covering these amounts, each policy covering $500 on the building and $1,000 on the stock. One of these policies was issued by appellant company and the other three by companies which Mrs. Furgason also represented; she being the agent at that time for a total of eighteen companies.

Shortly after said policies were issued, appellee began the construction of a new building on lot No. 12 in block 43, and advised Mrs. Furgason of their desire to have the insurance then carried transferred to the new location and to have the insurance on the building increased to $3,500 and on the stock to $7,000.

Appellee moved into the new building on or about December 15, 1926, and on May 3, 1927, a fire occurred in which the stock of merchandise and the new building were destroyed.

This suit is to recover the amount of the original policy issued by appellant.

Appellee alleged that prior to the completion of the new building they informed Mrs. Furgason of the intended change of location, and notified her of their desire to have the insurance transferred thereto and for additional insurance; that Mrs. Furgason informed them that the insurance would be transferred to the new location as soon as the building was completed and the merchandise placed therein; that on or about December 15, 1926, they advised her of the completion of the new building and that the stock had been transferred; that Mrs. Furgason promised to immediately cover the additional amount of insurance and make the necessary changes in the existing policies as to the change of location, and assured appellee that no lapse of coverage would occur; and that at such time a memoranda of the description of the new location and the amount of the stock inventory was made in writing by appellee and delivered to Mrs. Furgason and kept by her.

Appellant specially denied that it ever agreed with appellee to the writing of any policy other than the one originally issued, that it ever contracted to cover any property for appellee other than that located on the original location; specially pleaded that the original policy had been canceled with the consent of appellee in December, 1926, that same was never revived and no other policy was ever agreed to be issued as alleged by appellee, and that appellee was not the owner of the building and stock described in the original policy at the time of the loss.

The case was submitted to a jury on the following special issues:

"Special Issue No. 1: Did the agent, Mrs. Laura Furgason, of the defendant, agree to transfer the insurance policy sued on herein on the property from the old to the new location? Answer: 'No.'

"Special Issue No. 2: Did the agent, Mrs. Laura Furgason, of the defendant agree to re-write the insurance on the property in the new location in the defendant company? Answer: 'Yes.'

"Special Issue No. 3: Was the policy of insurance sued upon herein cancelled with the consent of the plaintiffs? Answer: 'Yes.'

"Special Issue No. 4: Was said policy of insurance cancelled with the agreement that the same would be re-written on the property in the new location in the defendant company? Answer: 'Yes.'"

At the request of appellant, the court submitted the following additional issue: "Do you find from the evidence that the record warranty clause was substantially complied with by the plaintiffs? Answer: Yes."

Upon the above findings the court rendered judgment in favor of appellee for $1,500 and

interest thereon at the rate of 6 per cent. from January 1, 1928.

From that judgment an appeal has been perfected to this court.

## Opinion.

Appellant's brief contains eighteen assignments of error and twenty-two propositions presenting for review the following:

(1) That the court erred in refusing to instruct a verdict in its favor; (2) that the court erred in overruling its plea in abatement; (3) that the court erred in admitting certain evidence of the witness Jack Hubbs; (4) that the jury's answers to issues Nos. 1, 2, and 4, and to appellant's requested issue are not supported by the evidence; (5) that the judgment is excessive, in that interest was allowed from a date prior to the date of the judgment; (6) that appellee, by failing to request the submission of issues as to the value of the personal property destroyed and as to whether the building was totally destroyed, waived and abandoned their claim for insurance on such items and cannot recover; (7) that the evidence was insufficient to raise any issues of fact as submitted in issues 1, 2, and 3, and the court erred in their submission; and (8) that the court erred in permitting one of the attorneys for appellee to read from and discuss a decision reported in the 13th Southwestern Reporter.

Appellant contends that the trial court should have instructed a verdict in its favor for the following reasons: (1) That the evidence fails to show that any contract was entered into between the parties at the new location; (2) because it is not shown that appellant was ever designated by either Mrs. Furgason or appellee to carry any part of the insurance at the new location; (3) because the evidence conclusively shows that Mrs. Furgason had no authority to write the insurance applied for without special permission which the evidence shows was not granted in this case; (4) that, Mrs. Furgason having been requested by appellee to handle the matter in accordance with her regular custom, no company having been designated, for failing to procure the insurance requested she alone would be liable to appellee; and (5) that, Mrs. Furgason having been designated by appellee to keep their property insured, and the evidence showing that she canceled the policy in appellant company, there would be no liability on appellant's part.

Appellee, in answer to the above contentions, asserts: (1) That, there being evidence to support the finding that Mrs. Furgason agreed to rewrite the insurance on the property in the new location in the appellant company, the appellant was liable for the amount of the judgment rendered; (2) that appellee having insurance in appellant company and its agent in agreeing to rewrite that insurance meant that it would be rewritten in appellant company; (3) that, it being undisputed that Mrs. Furgason was the agent of appellant and writing insurance for it, appellant not having pleaded want of authority on her part to write insurance, and the question of her authority to bind the appellant not being submitted to the jury, the question of her authority cannot be raised on appeal; (4) that, Mrs. Furgason having written a policy for appellee on their property in McCamey, the same having been accepted by appellant, they cannot on appeal dispute her authority to transfer the policy to another location; and (5) that, Mrs. Furgason being appellant's agent and agreeing to transfer the insurance and to not let it lapse, appellant, having a policy in force at the time of the agreement, is bound by her agreement.

Mrs. Furgason testified that, on account of the policy covering the building as well as the stock, she was not authorized to transfer the original policy to the new location, and that the only way the matter could be handled was for the original policy to be canceled and a new policy issued.

It has been held by our courts repeatedly that an insurance company through its duly authorized agent may contract by parol for the renewal of a fire insurance policy. And, in the absence of an agreement to the contrary, the presumption will be that the renewal will be upon the same terms and conditions and for the same amount provided in the old policy. United States Fire Ins. Co. v. Fife (Tex. Civ. App.) 6 S.W.(2d) 211, and authorities there cited.

In the same case it is held, and we think correctly, that, in the absence of evidence to the contrary, the presumption will be that the renewal would be in the same company as the former policy. That being true as to renewals, we see no reasons why the same presumptions will not arise in a case where the policy then in force must be rewritten, as the facts here show was necessary.

While it is true that appellee left the matter in the hands of Mrs. Furgason to look after according to her custom, still we think, and there being no evidence to the contrary, that appellee intended that same should be rewritten in the same companies as the former policies, and that Mrs. Furgason would have written it in those companies if she had been able to secure their permission to do so, at least as to the amount of the original policies.

Mrs. Furgason would hardly, after having designated certain companies to issue the original policies, have designated other companies in which to rewrite the policies, when such action on her part would necessitate the returning of unearned premiums and considerable bookkeeping.

Under the facts here we think the evidence sufficient to support the jury's finding that the agreement was to rewrite the insurance in the appellant company.

■ If this be true, then appellant would be liable to appellee for at least the amount of the original policy, and this case should be affirmed unless there be other matters in the record which call for a reversal.

■ Appellant filed, among other pleadings, its plea in abatement, which, omitting the formal parts, reads:

"That if plaintiffs had any such contract or policy of insurance with this defendant, which is not admitted, the same contains among other provisions, the following in substance, to-wit:

"If fire occur, the insured shall protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and within ninety one (91) days after the said fire shall render a statement to the insurer, signed and sworn to by said plaintiffs, stating the knowledge and belief of the insured as to the time and original (origin) of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all of the descriptions and schedules in all policies; any changes in the title, use, occupation and location, possession or exposure of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of the fire;

"And further, that nothing shall become due and payable under said policy until sixty (60) days after the ascertainment, estimate and satisfactory proof of the loss in said policy required shall have been received by the insurer, and further, that no suit or action on said contract for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the said insured, the plaintiffs herein, with all the foregoing requirements.

"Said defendant would show that if plaintiffs had any such policy of insurance, or are entitled to anything under any contract of fire insurance, as alleged or claimed, that this suit has been prematurely brought, and said provisions of the Texas Standard Policy of fire insurance just above quoted in substance have not been complied with. That said plaintiffs did not make an inventory of the articles claimed to have been destroyed, stating the amount claimed on each article, and did not give the proof of loss required by said provisions within ninety one (91) days, and, in fact, have never given such proof of loss, giving the information called for by the contract, and that nothing has become due and payable under said policy, and this suit has been prematurely brought and should abate."

This plea was overruled by the court, and appellant assigns error to the court's action in so doing. Appellee contends, however, that the notice and proofs called for in the policy were waived by the denial of liability by appellant.

The record discloses that Mrs. Furgason, upon receiving notice of the destruction of the property, advised Mr. Hubbs that there was no insurance on the property.

Certainly this statement by her, as agent of appellant, amounted to a denial of liability as far as her principal was concerned.

■ It appears to be well settled that the requirements in insurance policies for notice of loss, proof of loss, etc., may be waived by a denial of liability on the part of the insurer. Hartford Fire Insurance Co. v. Josey, 6 Tex. Civ. App. 290, 25 S. W. 685; Georgia Home Insurance Co. v. Jacobs, 56 Tex. 366; Niagara Insurance Co. v. Lee, 73 Tex. 641, 11 S. W. 1024; Sun Mut. Insurance Co. v. Mattingly, 77 Tex. 162, 13 S. W. 1016; Connecticut Fire Insurance Co. v. Hilbrant (Tex. Civ. App.) 73 S. W. 558.

Appellant in its pleading denied the existence of any contract of insurance on the property destroyed and that, along with the statements of its agent immediately after the loss, clearly shows that appellant was and is denying liability.

In so doing it clearly waived its right to insist upon the notice and proof called for in the policy, and the court correctly overruled its plea in abatement.

■ Appellant's seventh and eighth propositions question the sufficiency of the evidence to support the jury's finding that the record warranty clause had been complied with.

This issue was submitted at the request of appellant, and therefore it is in no position to urge before this court that the answer of the jury has no evidence to support it. Wichita Falls, R. & F. W. Railway Co. v. Crawford (Tex. Civ. App.) 19 S.W.(2d) 166, and cases there cited.

■ The witness Hubbs was permitted, over the objection of appellant, to testify to the amount of the inventory moved from the old to the new location, and the court's action in admitting this evidence is made the basis of its bill of exceptions No. 3, and is here advanced as a ground for reversal.

As appears from the bill of exceptions, the evidence was objected to on the ground that it was immaterial, not the best evidence, and would have no probative force on the question of value.

The bill shows that Hubbs testified as follows: "As between Mr. Johnson and myself, I was in active management of the business; I was in McCamey from two to three days every week and kept a check on the stock as as to what was in the building, and now recall .what the inventory was at the time I removed the stock over to the new building. The amount of inventory as of January 1, 1927, I have that and it is absolutely correct, as I got it from the Internal Revenue Department as of January 1, 1927, and it was sworn to and at that time it amounted to $22,-022.91. From that time on to the date of the fire I made periodical examination and took inventory of the stock monthly; I did this work myself with the assistance of our local manager; just prior to the fire, which occurred on May 3, 1927, I took inventory of the stock on the last of April. With reference to what the inventory reflected at that time as to the amount of the material in the building, exclusive of new automobiles and entirely from my memory—all of that merchandise was in departments—we had a filling station, parts. department, shop department and from month to month I would take this inventory and compare it with past inventories and I knew within a few dollars all the time, and it ranged about the same; some months it would be a few dollars over or under but each department had to carry a certain amount of stuff in order to have all that was required and that is how I arrive at the amount of merchandise destroyed by the fire. The merchandise amounted to $13,125.00, exclusive of the building and exclusive of new automobiles. * * * The amount of stock in the building at the time of the fire, as before stated, was $13,125.00, and that represented the true value of the property as of the date it burned, to the best of my knowledge; it was the real value at the time I took the inventory at the last of April, and that amount of stock and the value was in the building at the time it burned."

It can be seen from the above that the inventory testified to was being used as a basis of comparison for the later ones and that Hubbs used same as a basis for his testimony as to the amount of stock in the building at the time of the fire. We do not think the evidence subject to the objection made, and find no reversible error in its admission under the facts here.

Nor do we find error in the court's action in permitting the same witness to testify that the stock and building were totally destroyed.

Appellant contends that such evidence was merely a conclusion of the witness and was as to a fact that the jury was to decide.

We fail to see how a. witness who is acquainted with property, sees the same enveloped in flames, and sees that there remains only a heap of ashes, can be said to be voicing a conclusion when he testifies that it was totally destroyed. It appears from appellant's bill of exceptions No. 7 that one of the counsel for appellee in his opening argument read an extract from an opinion of the Amarillo Court of Civil Appeals, and appellant now contends that the action of the court in permitting this to be done is reversible error.

As shown by the bill of exceptions, the major part of the extract read to the jury was merely the court's statement of the pleadings of the parties and then discusses the question of ratification, a question not present in this case.

In this case the jury found some of the issues favorable to appellant and others in favor of appellee, which tends to show that they were not being governed by bias or prejudice.

While we do not look with approval upon the practice of which appellee's counsel was guilty here, yet we do not feel that appellant's rights have been prejudiced to such a degree as to call for a reversal of the judgment. These questions are addressed primarily to the discretion of the trial court, and, unless that discretion is shown to have been abused, an appellate court will not reverse. Vincent v. Bell (Tex. Civ. App.) 22 S.W.(2d) 753, and cases cited. The trial court in its judgment allowed interest on $1,500 from January 1, 1928, and appellant contends that it is liable for. interest only from and after the date of the judgment.

It is shown, as said heretofore, by the record, that Mrs. Furgason was notified of the fire just a few days after the loss, and immediately advised appellees that the old policies had been canceled and that she had been unable to rewrite the insurance for them, or, in other words, that there was no contract of insurance on the property in existence.

As said before, we think that, in connection with the fact that appellant later assumed the same attitude as to the matter, was a. denial of liability, and, if so, then interest began to run from that date. Delaware Underwriters, etc., Ins. Co. v. Brock, 109 Tex. 425, 211 S. W. 779, and cases cited.

After a full consideration of the many questions presented, we have concluded that appellant's assignments must be overruled and the judgment of the trial court affirmed, and it is so ordered.

HIGGINS, J., did not sit in this case.